UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| LUIS RAUL HERNANDEZ-UGANDO, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Nos. 2:19-CV-158<br>     2:17-CR-073 |

### **MEMORANDUM OPINION**

Before the Court is Luis Raul Hernandez-Ugando's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 76].[1] The United States has responded in opposition [Doc. 6]; and Petitioner has replied [Doc. 7]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 76] will be **DENIED**.

### I.   BACKGROUND

In August 2017, Petitioner and one co-defendant were charged in a twenty-three-count indictment pertaining to a conspiracy to commit wire fraud and aggravated identity theft, and the commission of the same.  [Crim. Doc. 8]. Petitioner was named in all twenty-three counts. *See id.*

---

[1] Document numbers not otherwise specified refer to the civil docket.

On May 14, 2018, Petitioner entered into a plea agreement with the government. [Crim. Doc. 48]. Petitioner agreed to plead guilty to one count of Conspiracy to Commit Wire Fraud and Aggravated Identity Theft, one count of Wire Fraud, and one count of Aggravated Identity Theft. *See* [*id*]. The plea agreement was signed by Petitioner and attorney Tyler S. Davis. [*Id*.]

In his plea agreement, Petitioner acknowledged that he and his co-defendant "used access devices that had been unlawfully re-encoded with at least 122 other stolen credit/debit account numbers" in addition to eleven stolen accounts listed previously in the plea agreement, bringing the total number of used access devices to 133. [*Id*. at 7-8]. Petitioner further acknowledged that he and his co-defendant engaged in the same scheme in "Midlothian, Virginia on or about February 12, 2016, in Columbus, Ohio on or about March 31, 2016, in Wahoo, Nebraska on or about September 16, 2016, and in Northfield, Minnesota on or about December 9, 2016." [*Id*.]

The Court conducted a change of plea hearing on May 29, 2018. Although there is no transcript of that hearing in the record, the Court recalls conducting its standard colloquy with Petitioner and finding him competent to enter a guilty plea.[2] The Court confirmed that Petitioner indeed wished to plead guilty. The Court also confirmed: that Petitioner had been afforded ample time to discuss the case with his attorney; that he believed that his attorney is fully aware of all the facts on which the charges were based; that counsel had explained

---

[2] Where, as here, the same judge considering the § 2255 motion also presided over the underlying proceedings, the judge may rely on his recollections of those proceedings. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

the meaning of any words Petitioner might not have understood; that counsel had explained the terms of Petitioner's plea agreement to him; and that Petitioner understood that his sentence would be determined *by the Court*.

The presentence investigation report ("PSR") calculated a total offense level of 16 and criminal history category of II, resulting in a guideline range of 24 to 30 months, with an effective guideline range of 48 to 54 months since a term of imprisonment for Count 13 must be imposed consecutively to any other counts. [Crim. Doc. 54, ¶ 80].

The government filed a notice of no objections to the PSR [Crim. Doc. 60] and a sentencing memorandum requesting Petitioner be sentenced within the guideline range of 48 to 54 months, based on the PSR. [Crim. Doc. 61, p. 2]. Petitioner did not file objections to the PSR, nor did he file a notice of no objections to the PSR. Petitioner, through counsel, did file a sentencing memorandum, requesting the sentence not exceed 48 months. [Crim. Doc. 65, p. 2]. Petitioner argued that, had the Government filed for a downward departure from the guidelines, Petitioner's offense conduct would include four mitigating factors as enumerated in 18 U.S.C. § 3553(a). [*Id*. at 1-2].

On September 11, 2018, the Court held a sentencing hearing wherein Petitioner was sentenced to a total of 48 months' imprisonment, with such term of imprisonment to run concurrently with Sullivan County, Tennessee, General Sessions Court Docket Number 2017-RK-49652. [Crim. Doc. 71, p. 2]. Although there is no transcript of that hearing in the record, the Court recalls confirming with Petitioner's counsel that he had gone over the PSR with Petitioner. Further, there was an interpreter at the hearing for Petitioner, the Court went over the offense level and guideline range as determined in the PSR, and Petitioner

3

was given an opportunity to address the Court, which he did. [*See* Crim. Doc. 68]. Petitioner did not say anything about not understanding the PSR or what the Court had stated regarding the offense level and guideline range. Petitioner did not file a direct appeal, but on September 4, 2019, he filed this timely § 2255 motion.

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief

under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

III. ANALYSIS

As an initial matter, Petitioner only explicitly raises one claim in this § 2255 motion which involves ineffective assistance of counsel relating to counsel's failure to file an objection to the PSR. [Doc. 2, p. 8]. Petitioner argues that counsel's failure to object to the "enhancement of 2 points in the calculation of the total offense level" caused Petitioner to receive a higher sentence than his co-defendant. [*Id*.]. Petitioner's argument, while styled as an ineffective assistance of counsel, reads more like an attack on his advisory guideline range. Petitioner's arguments for ineffective assistance of counsel are that (1) his co-defendant had a stipulation in his plea agreement regarding the schemes in Virginia, Minnesota, Nebraska, and Ohio that Petitioner did not have; (2) he and his co-defendant had the same conduct, charges, and offense but received different sentences because their offense level and criminal history were calculated differently because they had different attorneys; and (3) that he did not have an interpreter when he was given the PSR to sign, was not given a translated copy, and did not know what he signed. [*Id*. at 7-9].

The government responds that as Petitioner does not allege an error in the guidelines calculations applicable to him, counsel cannot be constitutionally ineffective as he had no legitimate basis to make the arguments that Petitioner claims should have been raised. [Doc. 6, p. 4]. Further, Petitioner's claim is actually a collateral attack on his sentencing decision and guideline range, to which Petitioner waived the right to appeal in his plea agreement. [*Id*. at 5]. Petitioner replies, asserting that the only difference between him and his co-defendant was attorneys and his co-defendant received less jail time. [Doc. 7, p. 2]. He believes that the PSR was wrong in including the enhancement for him and not for his co-defendant. [*Id*.]

6

In his motion, Petitioner focuses mostly on the disparate sentences and the disparate offense and criminal history levels between himself and co-defendant. He does not provide facts to support the conclusory claim that because he received a higher sentence, his attorney must have been insufficient. Petitioner points out that co-defendant had an added sentence in his plea agreement regarding the section about moving out of district, which is not in Petitioner's plea agreement. [Crim. Doc. 48, p. 11]. Petitioner and co-defendant are not constitutionally required to receive a plea agreement, much less the same plea agreement. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The government was therefore under no obligation to offer an even more lenient plea.

Because Petitioner is actually collaterally attacking his sentence, he waived his right to do so in his plea agreement, and he failed to raise this claim on appeal, Petitioner is procedurally defaulted from bringing this claim. *United States v. Calderon*, No. 98-1336, 1999 WL 801587, at *3 (6th Cir. Sept. 27, 1999). However, the Court will consider the merits of Petitioner's claims under the ineffective assistance of counsel standard.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Petitioner seems to believe that his counsel was constitutionally ineffective because he now thinks he could have secured a better deal if only his attorney had been a better negotiator. However, the law is well-settled that dissatisfaction with a plea deal does not rise to a showing of constitutionally ineffective counsel. *See,* e.g., *Hunter*, 160 F.3d at 1115

8

("[W]hile [petitioner] may later have decided that he could have done better, his dissatisfaction does not rise to a showing of constitutionally ineffective counsel"); *United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010) ("[W]hether a petitioner 'could have negotiated a better plea deal is irrelevant in the ineffective assistance context.'") (quoting *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006)). Additionally, a criminal defendant has "no constitutional right to plea bargain." *Weatherford* 429 U.S. at 561. The government was therefore under no obligation to offer an even more lenient plea.

Even if Petitioner's attorney would have objected to the enhancement in the PSR, Petitioner's argument fails at the second prong of the *Strickland* test as Petitioner has not shown that the result would have been different. The Plea Agreement clearly states that Petitioner and co-defendant relocated this scheme out of district. [Crim. Doc. 46, pp. 5-10]. Petitioner does not contest this factual basis for the enhancement. Petitioner also confirmed his understanding that his sentence would be determined *by the Court* after the Court had reviewed and considered the PSR.

At the sentencing hearing, Petitioner's counsel affirmed that he had gone over the PSR and there were no objections, the Court stated what Petitioner's offense and criminal history levels were, and Petitioner addressed the Court at the hearing. As the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner's unsupported allegations are directly contradicted by the record and are not credited. Petitioner thus

9

cannot bear his burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

To the extent that Petitioner is asserting that his counsel was ineffective in failing to raise this issue at sentencing, Petitioner has not shown that he was prejudiced by this failure. The Court determines the sentence, and, based on the PSR, could have concluded that Petitioner was subject to the enhancement for moving out of district *sua sponte*. Petitioner does not allege that the facts of the plea agreement are incorrect, just that they were applied to him and not his co-defendant. Furthermore, Petitioner has not shown that his counsel was ineffective in failing to file an appeal raising this issue, as Petitioner has not alleged that he asked counsel to file an appeal or would have filed an appeal absent counsel's mis-advice. Accordingly, Petitioner has not shown that counsel was ineffective.

To the extent that Petitioner claims he did not know what the PSR said when he signed it as he was not provided with a translated version, Petitioner had an opportunity to raise this issue with the Court at the sentencing hearing but did not. Petitioner does not allege that his attorney never went over the contents of the PSR with him, only that he was not provided a translated copy of the PSR before he signed the document. [Doc. 2, p. 9]. As this is a due process violation, and not a constitutional issue, Petitioner has not proven that he is entitled to relief under 28 U.S.C. §2255. *Reed*, 512 U.S. at 353. Further, as Petitioner waived his right to raise this issue on appeal [Doc. 48, pp. 16-17], he is procedurally defaulted from bringing this claim. *Calderon*, No. 98-1336, 1999 WL 801587, at *4.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 76] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claim under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge